Burdick *v.* The People.

[FOURTH DEPARTMENT, GENERAL TERM, at Buffalo, June 6, 1870. *Mullin,* P. J., and *Johnson,* Justice.]

---

DANIEL BURDICK, plaintiff in error, *vs.* THE PEOPLE, defendants in error.

Whenever a prisoner on trial puts his general character in issue by his own act, he takes the risk of its being proved bad, and of every presumption which such proof legitimately raises against him.

And so, where a prisoner, upon trial on an indictment for a felony, avails himself of the privilege granted by the statute of 1869, (*Laws of* 1869, *ch.* 678,) of testifying as a witness in his own favor, he necessarily puts his general character and credibility as a witness, in issue, and makes it the proper subject of evidence on that question.

When he makes himself a witness, he becomes subject to all the rules applicable to other witnesses, notwithstanding his other character, of a party on trial for a felony.

The statute which allows a prisoner upon trial for a crime, to become a witness in his own behalf, at his own election, does not protect him from being impeached, the same as any other witness.

Where, upon a trial for murder, the question raised by the prisoner's testimony was, whether, situated as he was, there was reasonable ground for an apprehension, on his part, of a design on the part of the deceased, to do him, the prisoner, some great personal injury, and to believe there was imminent danger of such design being accomplished; and the judge charged, as matter of law, that the homicide was not justifiable, even if the jury believed the facts and circumstances at the time, and before, the firing of the pistol which produced it, were as stated by the prisoner in his testimony; *Held* that the question was clearly a question of fact for the jury, and not a question of law for the court; and that the charge was erroneous because it took the question from the jury, entirely.

WRIT of error to the Cattaraugus oyer and terminer, to remove an indictment and conviction for murder.

On the trial, the defendant, Burdick, was sworn and ex-

amined as a witness in his own behalf. At the close of his testimony, the counsel for the people offered to prove the general character of the prisoner, for the purpose, and only purpose, of impairing the force and weight of his evidence with the jury. The counsel for the prisoner objected to any proof as to the bad character of the prisoner, on the grounds, 1st. That the bad character of a prisoner on trial for a felony cannot be given in evidence as tending to prove the guilt, although he may have been sworn as a witness on his said trial in his own behalf. 2d. That the evidence was improper, immaterial and incompetent. The court overruled the objection and received the said evidence. To which decision and ruling the counsel for the prisoner duly excepted. The people then gave evidence tending to prove that the general character of the prisoner was and is bad, and that in the opinion of the witnesses he was not entitled to credit under oath. The evidence being closed, the court charged the jury, among other things, that if they believed the facts and circumstances at the time, and before the firing of the pistol which killed Baker, were as stated and detailed by the prisoner in his evidence, and that the deceased had hold of the person of the prisoner as stated by him in his evidence, then the prisoner was not, in the law, justified in taking the life of the deceased. To which charge and decision the counsel for the prisoner excepted.

*D. H. Bolles*, for the plaintiff in error.

I. The admission of testimony as to the prisoner's bad character, though limited by the court to purposes of his impeachment as a witness, was, it is submitted, incompetent. 1st. Prior to the statute of 1869, (*ch.* 678,) evidence of the general bad character of a defendant was, in criminal proceedings, inadmissible, unless the defendant himself provoked the scrutiny, by testimony of general good character, introduced by himself. (3 *Greenl. Ev.* § 25.

Burdick *v.* The People.

1 *Phil. Ev.* 765, 4th ed. *People* v. *White,* 14 *Wend.* 112. *People* v. *White,* 24 *id.* 520. *People* v. *Bodine,* 1 *Denio,* 281.) So rigid and inflexible was this rule, and so strenuous were the courts in its enforcement, that it has been held erroneous for the judge in his charge at the trial, to suggest to the jury an inquiry why the prisoner had given no evidence of her general character, (*People* v. *Bodine, supra ;*) or even to call the attention of the jury to the absence of such evidence. (*People* v. *White,* 24 *Wend. supra.*) 2d. The act of 1869 removes the common law disability of a defendant in criminal proceedings, and provides that he shall be deemed a competent witness, if he desires to testify. Does it also remove the common law disability of the prosecution to impeach his character? We submit it does not. (*a.*) The act was designed for the protection of the defendant. This is apparent both from the fact that it emancipates him from the silence the law had previously imposed, and also from the fact that, by an express provision, his silence, if he sees fit to preserve it, shall not create a presumption against him. But, if the theory of the prosecution is sound, the act, instead of conferring a privilege, embodies an intolerable hardship. A public accusation stirs up against the accused all the latent scandal in the community in which he resides, stimulates into common talk all the jealousies and enmities hitherto dormant, of parties who have conceived cause of offense against him, and puts in motion a legion of reckless, malicious and mischief-making tongues. Thus a reputation is created, wholly bad and grossly unjust, and witnesses summoned to speak of his character, will draw no fine distinctions as to time, however important, and will confound, perhaps honestly, his reputation prior to the commission of the alleged offense, with that which hatred and clamor have created afterwards. In nine cases out of ten, a man of reputation, before unblemished, testifying as a witness under indictment, would be met by a cloud of impeaching

witnesses, particularly if the crime with which he stood charged was of a heinous and exciting character. Jurors are quite as indiscriminating as witnesses, and in spite of warnings and limitations on the part of the court, would, in the vast majority of cases, allow the impeaching testimony to prejudice their minds against the defendant, not merely as a witness, but as the party accused; not simply upon the question of his credibility, but upon the direct question of his guilt. Again, on the other hand, in spite of the protective character of the act in that behalf, it cannot be disputed that a jury would be irresistibly tempted, by the failure of the defendant to offer himself as a witness, to indulge in harmful presumptions of greater or less strength against him. If, therefore, the theory of the prosecution in this case is sound, the law in practice subjects the defendant to two merciless alternatives. If he avails himself of his ability to testify, he is liable to impeachment, with all its disastrous consequences of jury prejudice. If he refrains from testifying, he is impaled upon the instant and direct inference of his guilt. (*b.*) Prior to the passage of this act, two disabilities, pertinent to the question now under consideration, attended every stage of a criminal proceeding—one resting on the defendant, the other on the prosecutor. Both were common law disabilities, and the latter was a defendant's common law privilege. The one precluded the defendant from being a witness. The other precluded the prosecution from attacking his general character. The former was abolished by the express terms of the act, which was designed for the protection of the prisoner, while nothing was expressed or intimated by the act in relation to the latter. Can it be claimed with any show of reason, that while a new privilege was conferred upon him by express language, an existing and important immunity was taken from him by implication? It would seem as if the settled rule of construction, that a statute in derogation of the common law should be strictly

interpreted, and that no unexpressed significance should be interpolated in it, applies with peculiar force to the present case, and that the ancient exemption of a defendant from impeachment of his general character should stand unimpaired, until overthrown by positive and explicit enactment.

II. The charge of the court, as stated in the bill of exceptions, to the effect that the testimony of the defendant, even if the jury believed it, did not warrant a conclusion of justifiable homicide, was, it is submitted, erroneous. According to the prisoner's statement, he was, just before the homicide, engaged in the prosecution of a business of his own, in which the deceased had no concern whatever, upon a public street in the village of his residence, where he had just as perfect a right to be as had the deceased himself. With that business, and with his progress along the street, the deceased unwarrantably interfered, saluting him with opprobrious epithets and preventing him from reaching his house. He then caught him by the throat with one hand and held him fast with the other. The defendant told him to let go, which he refused to do; endeavored to release himself, but found it impossible. To frighten the deceased from his hold, after urging him to refrain, and vainly exerting himself to escape, he fired two shots in succession, as a warning, and finding this of no avail, and that he was no longer able to stand the grasp upon his throat, he shot again, and this time at the deceased, designing to wound, but not to kill. If the statute relating to justifiable homicide, and the authorities adjudicating its construction, were ever applicable to any case, they were applicable to this. The defendant, without any fault of his own, was placed in a position where "there was reasonable ground to apprehend a design to do him some great personal injury," and reasonable ground to apprehend that "there was imminent danger of such design being accomplished. (2 *R. S.*

*part* 4, *art.* 1, *tit.* 2, *ch.* 1, § 3. *Patterson* v. *The People,* 46 *Barb.* 625. *The People* v. *Sullivan,* 3 *Seld.,* 396. *Shorter* v. *The People,* 2 *Comst.* 193. *The People* v. *Austin,* 1 *Park. Crim. Rep.* 154. *The People* v. *Cole,* 4 *id.* 35.)

*M. T. Jenkins,* (district attorney,) for the people.

I. It is claimed by the plaintiff in error that the testimony impeaching his character, was not competent. By the statute of 1869, the prisoner was made a witness, if he chose to be so, in his own behalf; and his evidence is to be weighed by the jury as they would weigh the evidence of any other witness; and the rules of law which apply to witnesses generally, apply to the prisoner as a witness. His character may be impeached for truth and veracity; and for that purpose, and that alone, was the evidence offered. In law it has no other effect; and when the prisoner took the witness stand, he thereby opened the door for that class of evidence, just as much as though he had given evidence of his own good character. The jury have no right to take into consideration the bad character of the prisoner, in determining his guilt or innocence; but the danger that they may do so, is no objection to the evidence.

II. The court charged the jury that if they believed the statement of the defendant, as a witness, to be true, the prisoner was not justified in the killing of Baker. To this charge the defendant's counsel excepted. The only question is, should the question of justification have been submitted to the jury, or had the court the right to decide as a question of law, that the facts as sworn to by the prisoner, did not amount to justifiable homicide, under the statute. The statute is, when the homicide be committed in the lawful defense of such person, &c., when there shall be reasonable ground to apprehend a design to commit a felony, or to do some great personal injury; and there shall be imminent danger of such design being ac-

Burdick *v.* The People.

complished; if such facts exist, then the homicide will be justifiable. If none of the facts contemplated by the statute exist, then it is for the court, and not the jury, to say whether the homicide be justifiable. (*People* v. *Shorter,* 2 *N. Y.* 193.) The court said, in that case : " There is no color for calling it justifiable homicide, or for leaving any such question for the jury." Was there any fact in the statement of the prisoner that would justify the jury in finding the homicide justifiable? The fact that Baker had taken the prisoner by the throat, would not warrant such a finding. The law holds life too sacred to allow it to be taken on such provocation as that. These acts do not indicate, in the least, that the deceased was about to commit a felony upon the person of the prisoner, or to do him any great personal injury. They are not such acts as the law demands, to justify one person in taking the life of another. And further, the statute says there must not only be a reasonable ground to apprehend a design, &c., but there shall be imminent danger of such design being accomplished. Was there any evidence given by the prisoner that would warrant the jury in saying that imminent danger existed? (*Wharton,* § 1020.) " To excuse homicide upon the ground of self-defense, there must always appear to be such a degree of necessity as may reasonably be deemed inevitable. The danger must be actual and urgent."

III. Before the prisoner could be justified in the killing of Baker, it must appear that he did all he could to avoid the killing, and to escape from danger. (*People* v. *Shorter,* 2 *N. Y.* 203. *People* v. *Cole,* 4 *Park.* 35. *Russ. on Crimes,* 68.) In the case last cited, Judge Emott says : " That before a person will be justified in killing another, it must appear that he was unable to withdraw himself from such imminent danger, and therefore should have been compelled to kill his assailant, to protect himself against his attack." There must be some fact upon which the jury

could base their verdict in favor of the accused, that the law would sanction. That there was none in this case is very apparent. The prisoner was attacked by the deceased without any weapon, in a public street in the village of Olean, within a few rods of the residences of divers individuals, and within four rods of persons standing in the street; all of whom could have been summoned to his aid with one cry for help. But without a single effort to bring any person to his assistance, he kills his assailant, and then flees. The law will not justify the taking of human life upon such circumstances as these. When a man is struck with the naked hand, and has no reason to apprehend a design to do him great bodily harm, he must not return the blow with a deadly weapon. (*The People* v. *Shorter*, 2 *N. Y.* 203.)

*By the Court,* JOHNSON, J. Two questions only are raised by the counsel for the plaintiff in error: 1. Upon the exception to the ruling admitting evidence to impeach the prisoner's character for truth and veracity, as a witness; and 2d. On the exception to the charge to the jury.

The prisoner, upon the trial, voluntarily offered himself as a witness in his own behalf, and was examined in regard to all the circumstances attending the killing of the deceased, for which he was then upon trial, on an indictment charging him with the crime of murder. The people then offered evidence of the general bad character of the prisoner, for the purpose only of impeaching his character and credibility as a witness. To this the prisoner's counsel objected, on the ground that evidence of the bad character of a prisoner on trial for a felony is incompetent. The evidence was received for the purpose for which it was offered, and the prisoner's counsel excepted.

This ruling was clearly right. While the common law, in its humanity, and high regard for the rights of life and

liberty, gives every person on trial for crime, the benefit of the presumption of previous good character, and does not, in the first instance, allow an inquiry into his previous character; yet, if the prisoner himself brings his character into question on the trial, and undertakes to show, as matter of fact, that his previous character has been good, the people may then attack it, in reply, and show, if they can, that it has been bad. Whenever a prisoner on trial puts his general character in issue by his own act, he takes the risk of its being proved bad, and of every presumption which such proof legitimately raises against him. And so where a prisoner, upon trial on an indictment for a felony, avails himself of the privilege granted by the recent statute, of testifying as a witness in his own favor, he necessarily puts his general character and credibility as a witness, in issue, and makes it the proper subject of evidence on that question. When he makes himself a witness, he becomes subject to all the rules applicable to other witnesses, notwithstanding his other character of a party on trial for felony. The statute which allows a prisoner, upon trial for crime, to become a witness in his own behalf, at his own election, does not protect him from being impeached, the same as any other witness. If it did, it would be most dangerous and pernicious in its tendency, opening a ready and inviting door to the escape of every one charged with the commission of crime. It is not for the courts to question the policy of this statute, but only to see that it is fairly interpreted, and faithfully administered. We cannot fail to see, however, that it must and will inevitably tend to make the previous character of the accused, on trial, the subject of inquiry and evidence, much more than formerly, and more in accordance with the rule and practice of the civil than of the common law. The temptation to the accused to become a witness in his own behalf, in order to ward off inculpating testimony, or to mitigate its force, must almost always be

very great, if not absolutely irresistible; and his becoming a witness must necessarily bring his previous character in question, as a witness, if not as a party. If he is so unfortunate as to have a bad character, even as a witness, it will be exceedingly difficult to prevent its telling against him in the scale as a party, in the minds of the jury, notwithstanding the most careful caution by the court, that it is not to be regarded as evidence in chief.

In regard to the charge, we think the exception was well taken. The judge charged, as matter of law, that the homicide was not justifiable, even if the jury believed the facts and circumstances at the time, and before the firing of the pistol which produced it, were as stated by the prisoner in his testimony. This took the question from the jury entirely. It was clearly a question of fact for the jury, and not a question of law for the court, upon the prisoner's testimony. The question raised by the prisoner's testimony was, whether, situated as he was, there was reasonable ground for an apprehension on his part, of a design on the part of the deceased to do him, the prisoner, some great personal injury, and to believe there was imminent danger of such design being accomplished. According to this testimony, the deceased had persisted in following the prisoner from street to street, at this time in the night, with threats and abusive language, and finally had seized him with a firm grasp by the throat, choking him almost to suffocation, and refused to relinquish his grasp after being warned of the consequences of persistence, and even calling for his revolver, after a warning shot had been fired, and before the fatal one was given by the prisoner. Upon this testimony it was most clearly a question for the jury to determine, whether there was reasonable ground to apprehend a design to do a great personal injury, and whether the prisoner really believed he was in imminent danger of its being inflicted upon him. The design, and the injury apprehended, must be something

more than a mere assault and battery. The language of the statute is, " great personal injury," without further defining its extent; and there is nothing in the case which calls for any particular definition as to the measure of the injury apprehended, in order to make a homicide justifiable. It is said, on behalf of the people, that under all the circumstances the jury could not have believed the prisoner's version to be the true one, had it been submitted to them. This may be so, and yet it is no answer. We cannot say, as matter of law, that they could not have believed it, or some portion of it. It is enough that they were deprived, by the charge, of the opportunity of passing upon it, and the questions of fact arising thereon.

The conviction, judgment and sentence must therefore be reversed, and a new trial ordered.

[FOURTH DEPARTMENT, GENERAL TERM, at Buffalo, June 6, 1870. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]